DOUGLAS M. FARRAGO,   )
          )
    Plaintiff,  )
          )
    vs.     )   No. 4:06-CV-958 CEJ
          )
RAWLINGS SPORTING GOODS  )
COMPANY, INC.,     )
          )
    Defendant.  )

## MEMORANDUM AND ORDER

This matter is before the Court on the parties' cross-motions for summary judgment. The issues are fully briefed.

Plaintiff, the holder of United States Patent Number 5,073,986 (the '986 patent), brings this action for patent infringement pursuant to 35 U.S.C. § 1 *et seq.* Plaintiff alleges that a product produced by defendant Rawlings Sporting Goods Company, Inc. infringes the '986 patent, a violation of 35 U.S.C. § 271, and that the infringement was willful. Plaintiff seeks actual and punitive damages as well as injunctive relief.

Defendant brings a counterclaim seeking a declaratory judgment that its product does not infringe the '986 patent and that claims 12 and 13 of the '986 patent are invalid and/or unenforceable under 35 U.S.C. §§ 102, 103, and 112.

### I. Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Fed. R. Civ. P. 56(c). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## II. Background

Plaintiff Douglas M. Farrago is the holder of United States Patent Number 5,073,986 (the '986 patent), titled "Pad Structure for Relieving Knee Stress." The pad structure consists of a flexible enclosure or cover which is filled with a flexible,

2

resilient material and which can be attached to the leg of the wearer. The pad structure's potential users include baseball catchers, weight lifters, gardeners, and others who frequently kneel and squat. Defendant Rawlings Sporting Goods Company, Inc. produces and markets a product called the Knee Reliever, which contains internal padding that is flexible and resilient and that may be secured by straps to the user's leg. Rawlings markets two versions of the Knee Reliever, one for adults and one for children (the Knee Reliever Youth model). Plaintiff alleges that both products infringe the '986 patent.

The parties jointly moved for construction of claim 12 and dependent claim 13 of the '986 patent. Following a hearing pursuant to <u>Markman v. Westview Instruments, Inc.</u>, 517 U.S. 370 (1996), the Court construed the scope of claim 12 of the '986 patent in a Memorandum dated May 24, 2007.

Claim 12 of the '986 patent reads (with disputed terms underlined):

> A pad structure for relieving stress to a person's knee caused by the person squatting or kneeling, comprising:
>
> > <u>a generally polyhedron shaped flexible enclosure</u> having major and minor longitudinal axes, the cross-sectional configuration of <u>the enclosure along its major longitudinal axis being substantially quadrilaterally shaped</u>, <u>having four periphery surfaces</u>, the cross-sectional configuration of the enclosure along its minor longitudinal axis being substantially rectangular shaped, a first periphery surface adapted to be disposed adjacent the back of the upper leg of the person, a second periphery surface adapted to be disposed adjacent the back of the lower leg of the person, <u>a third periphery surface adapted to be disposed adjacent and spaced from the back of the knee of the person</u> and a fourth periphery surface is disposed opposite the third periphery surface;

all of the periphery surfaces being disposed between the back of the upper leg and the back of the lower leg with no portion of the flexible enclosure being disposed upon the front of the lower leg;

the flexible enclosure being substantially filled with a flexible, resilient material; and
<u>means for reasonably securing the flexible enclosure to the person's leg</u>, whereby the flexible enclosure is disposed behind the person's knee and in contact with the back of the person's upper and lower leg.

The Court interpreted the language of claim 12 with reference to the enclosure in a filled state, rather than an empty one, and construed the disputed terms as follows:

(1)   The phrase "generally polyhedron shaped" means that the overall shape of the enclosure, when in a substantially filled state, must be that of a polyhedron, and the faces of the polyhedron need not be strictly or perfectly flat or planar, but must be generally flat or planar.

(2)   The phrase "substantially quadrilaterally shaped" means that the enclosure along its major longitudinal axis has an overall quadrilateral shape with four sides which are overall flat or level and are composed of overall straight lines, and the shape's internal angles reach the sum of approximately 360 degrees.

(3)   The phrase "having four periphery surfaces" means that the pad has four periphery surfaces which meet, but not necessarily at corners, and if at corners, those corners need not be of any particular angle.

(4)   The phrase "a third periphery surface adapted to be disposed adjacent and spaced from the back of the knee of the person" allows, but does not require, the third periphery surface to be perpendicular to the major longitudinal axis. The phrase precludes a pad enclosure in the shape of a true triangle with an apex facing the back of the knee, but allows for a pad enclosure with two substantially quadrilaterally shaped sides and four periphery surfaces, where the third periphery surface is very narrow. The pad enclosure need not touch the knee.

(5)   The phrase "means for reasonably securing the flexible enclosure to the person's leg" means a strap or straps that originate from the pad enclosure or that originate from a shin guard; regardless of the origination point, the strap(s) must

perform the function of securing the enclosure to the wearer's leg.

Memorandum, May 24, 2007, at 20-21.

### III. <u>Discussion</u>

#### A.    Infringement

Plaintiff moves for summary judgment on his claim that the Rawlings Knee Reliever infringes the '986 patent. In its cross-motion, defendant Rawlings seeks summary judgment on its claim of non-infringement.  Rawlings argues that the Knee Reliever does not meet several of the patent's claim terms, literally or under the doctrine of equivalents, and that no reasonable jury could find that the Knee Reliever infringes the '986 patent.

#### 1.    Literal Infringement

To determine whether a patent claim has been infringed, the Court first construes the disputed claims to determine the scope of the claims and then determines "whether the properly construed claim encompasses the accused structure." <u>Bai v. L&L Wings, Inc.</u>, 160 F.3d 1350, 1353 (Fed. Cir. 1998) (internal citations omitted). Claim construction is a matter of law, while infringement, either literal or under the doctrine of equivalence, is a question of fact. <u>Id</u>.

"Literal infringement requires a patentee to prove by a preponderance of the evidence that every limitation of the asserted claim is literally met by the allegedly infringing device." <u>Biovail Corp. Intl. v. Andrx Pharmaceuticals, Inc.</u>, 239 F.3d 1927 (Fed. Cir. 2001) (citation omitted). "[T]he failure to meet a single

limitation is sufficient to negate infringement of the claim."
Laitram Corp. v. Rexnord, Inc., 939 F.2d 1533, 1535. (Fed.Cir. 1991).[1]

"[A] literal infringement issue is properly decided upon summary judgment when no genuine issue of material fact exists, in particular, when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device." Bai v. L&L Wings at 1353.

Claim 12 includes the requirement that the overall shape of the claimed pad enclosure be "generally polyhedron shaped." The Court construed this phrase to mean that "the overall shape of the enclosure, when in a substantially filled state, must be that of a polyhedron, and the faces of the polyhedron need not be strictly or perfectly flat or planar, but must be generally flat or planar." Memorandum, May 24, 2007, at 20.

Plaintiff asserts that because the Rawlings Knee Reliever is a solid with plane faces which are flat, it is generally polyhedron shaped. In support of this argument, plaintiff presents the declaration of Daniel A. McAdams, Ph.D., a mechanical engineer and product designer who provided an expert opinion on the issue of infringement. McAdams opines that the Knee Reliever meets the above limitation because its faces are generally flat or planar.

_____

[1] See also Cole v. Kimberly-Clark Corp., 102 F.3d 524, 432 (Fed. Cir. 1996) (citation omitted): "Literal infringement of a claim exists when every limitation recited in the claim is found in the accused device, e.g. when the properly construed claim reads on the accused device exactly."

In support of his opinion, McAdams refers to a photograph of the Knee Reliever viewed from the side.

Rawlings counters that the Knee Reliever has a rounded, curved upper surface. Rawlings has submitted a sample of the actual Knee Reliever and photographs of the Knee Reliever as exhibits.[2]

Plaintiff's only support for the argument that the Knee Reliever's faces are generally flat or planar is the opinion of McAdams. The Court finds that this expert evidence is insufficient to meet plaintiff's burden:

> It is well settled that an expert's unsupported conclusion on the ultimate issue of infringement is insufficient to raise a genuine issue of material fact. . . . [A] party may not avoid summary judgment simply by offering an opinion of an expert that states, in effect, that the critical claim limitation is found in the accused device. . . . [T]he expert must set forth the factual foundation for his opinion – such as a statement regarding the structure found in the accused product – in sufficient detail for the court to determine whether that factual foundation would support a finding of infringement under the claim construction adopted by the court, with all reasonable inferences drawn in favor of the nonmovant.

Arthur A. Collins, Inc. v. Northern Telecom Ltd., 216 F.3d 1042, 1046, 1047-48 (Fed. Cir. 2000) (internal citations omitted).

McAdams' expert opinion merely states that the Knee Reliever infringes the '986 patent, and his opinion on this issue is based solely on a photograph of the Knee Reliever. Even when viewed in the light most favorable to the plaintiff, the opinion of McAdams

---

[2] Plaintiff asserts that the sample Knee Reliever submitted to the Court is not representative of all Knee Relievers. As defendant notes, plaintiff does not offer any evidence to support this assertion, and thus the Court will not consider it.

does not create a genuine dispute that the Knee Reliever has generally flat or planar surfaces.

The sample and the photographs submitted by defendant clearly show that the Knee Reliever has a rounded, curved upper surface, and no reasonable jury could find otherwise. Therefore, the Court finds that the Rawlings Knee Reliever does not literally infringe the claim limitation that requires the overall shape of the pad enclosure to be "generally polyhedron shaped." This failure to meet an element of the claim thus negates any finding of literal infringement, and it is unnecessary to address whether the Knee Reliever infringes any of the other claim limitations.

## 2. Doctrine of Equivalents

Under the doctrine of equivalents, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." Warner-Jenkinson Co., Inv. v. Hilton Davis Chem. Co., 520 U.S. 17, 21 (1997), citing Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 609 (1950).

Equivalence is found where "each and every limitation of the claim is literally or equivalently present." CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG, 224 F.3d 1308, 1318-19 (Fed. Cir. 2000) (citations omitted). "A claim limitation is 'equivalently present' in an accused device if there are only 'insubstantial differences' between the limitation and

corresponding aspects of the device." Id. at 1319, quoting Hilton Davis Chem. Co. v. Warner-Jenkinson Co., 62 F.3d 1512, 1517-18 (Fed. Cir. 1995), *rev'd on other grounds*, Warner-Jenkinson Co., 520 U.S. 17 (1997). In assessing equivalency, the Court applies the function-way-result test: whether "two devices do the same work in substantially the same way, and accomplish substantially the same result." Graver Tank, 339 U.S. at 608 (internal citations omitted). If so, the two devices "are the same, even though they differ in name, form or shape." Id.

The "all limitations" rule "holds that an accused product or process is not infringing unless it contains each limitation of the claim, either literally or by an equivalent." Freedman Seating Co. v. American Seating Co., 420 F.3d 1350, 1358 (Fed. Cir. 2005) (citations omitted). The rule requires courts to assess equivalence "on a limitation-by-limitation basis, as opposed to from the perspective of the invention as a whole." Id. Under the all-limitations rule, "an element of an accused product or process is not, as a matter of law, equivalent to a limitation of the claimed invention if such a finding would entirely vitiate the limitation." Id. To determine whether a finding of equivalence would entirely vitiate a claim limitation, the Court must determine "whether the alleged equivalent can be fairly characterized as an insubstantial change from the claimed subject matter without rendering the pertinent limitation meaningless." Id. at 1359. A "subtle difference in degree" can create a genuine issue of material fact as to whether infringement through equivalence exists, but a

"clear, substantial difference or difference in kind" cannot. Id. at 1360.

Infringement by equivalents is a fact issue "ordinarily preserved for the jury," but if "the evidence is such that no reasonable jury could determine two elements to be equivalent, district courts are obliged to grant partial or complete summary judgment." CAE Screenplates, 224 F.3d at 1319, citing Warner-Jenkinson, 520 U.S. at 39 n 8.

Plaintiff claims that the Knee Reliever infringes the '986 patent under the doctrine of equivalency because it performs the same function (supporting the knee joint during a squatting motion) in the same way (with four periphery surfaces) to obtain the same result (reducing stress on the knee) as the pad claimed by the patent in suit. In support of this argument, plaintiff again refers to McAdams's opinion that the Knee Reliever performs the same function as the patented pad by providing the equivalent of four surfaces to support the knee and reduce knee stress. Defendant responds that plaintiff presents insufficient factual support for this argument, and the application of the doctrine of equivalency is limited by prosecution history estoppel, prior art, and the all elements rule.

The Court has construed the claim language "having four periphery surfaces" to mean that the pad enclosure "has four periphery surfaces which meet, but not necessarily at corners, and if at corners, those corners need not be of any particular angle." Memorandum, May 24, 2007, at 20. Defendant claims that the Knee

10

Reliever has one single upper surface that is curved, and therefore does not have four periphery surfaces. Defendant argues that if the Court were to determine that a pad having three periphery surfaces, one of which is curved, is equivalent to a pad with four periphery surfaces, it would entirely vitiate the meaning of the claim limitation of "four periphery surfaces." The Court agrees.

No reasonable jury could find that there are insubstantial differences between a pad with three periphery surfaces, one of which is curved (the Knee Reliever), and a pad with four distinct peripheral surfaces, as contemplated by the '986 patent. Nor could a reasonable jury find that there is only a "subtle difference in degree" between a three-sided pad with a curved upper surface and a pad with four periphery surfaces; that is a clear, substantial difference. To hold otherwise would vitiate the meaning of the limitation of "four peripheral surfaces," rendering that requirement meaningless.

In addition, plaintiff presents only the unsupported conclusions of its expert witness McAdams, and this evidence does not carry the burden required of plaintiff.

> To avoid a grant of summary judgment of non-infringement by equivalents, the patentee must present "particularized evidence and linking argument as to the 'insubstantiality of the differences' between the claimed invention and the accused device, or with respect to the 'function, way, result' test." . . . Thus, the patentee has the burden to present particularized evidence that links the accused products to the patent on a limitation by limitation basis.

Motionless Keyboard Co. v. Microsoft Corp., 486 F.3d 1376, 1382 (Fed. Cir. 2007), quoting PC Connector Solutions LLC v. SmartDisk

Corp., 406 F.3d 1359, 1364 (Fed. Cir. 2005) (additional citations omitted). The plaintiff has not presented particularized evidence linking the Knee Reliever to the '986 patent limitations or establishing that the Knee Reliever performs the same function, in the same way, with the same result, as the pad contemplated by the patent. Plaintiff thus has not presented evidence that would allow a reasonable jury to find infringement by equivalence.

The plaintiff has not shown that each and every limitation of claim 12 is present, literally or equivalently, in the Knee Reliever. There is therefore no need for the Court to consider the extent to which the application of the doctrine of equivalents could be further or alternatively limited by prior art or prosecution history estoppel.

**B. Invalidity**

Defendant asserts a counterclaim seeking a declaratory judgment that claims 12 and 13 of the '986 patent are invalid under 35 U.S.C. §§ 102 (claimed invention lacks novelty), 103 (claimed invention is obvious), and 112 (specification fails to comply with the written description requirements and patent claims fail to particularly point out and distinctly claim the subject matter of the invention).[3]

---

[3] Defendant also asserted the argument that the '986 patent is invalid as a defense to the allegation of infringement. The finding of non-infringement makes it unnecessary for the Court to address the alleged invalidity of the patent as a defense. However, the Court will nevertheless consider the defendant's counterclaim seeking a declaration that the patent is invalid, because the counterclaim is independent of the defense. See Cardinal Chem. Co. v. Morton Int'l, Inc., 508 U.S. 83 (1993); and

A patent is presumed valid, although the presumption may be overcome by clear and convincing evidence. 35 U.S.C. § 282.

> Where there is no evidence of invalidity other than the prior art already considered by the patent office, the challenging party must overcome the deference accorded the patent examiner, whose duty it is to issue only valid patents, and who is presumed to have properly done his or her job, to have expertise in interpreting the references, and to be familiar with the level of skill in the art.

Al-Site Corp. v. Cable Car Sunglasses, 911 F.Supp. 410 (N.D. Cal. 1994), citing American Hoist & Derrick Co. v. Sowa & Sons, Inc., 725 F.2d 1350, 1359 (Fed. Cir. 1984). Thus, the challenger's "'burden is especially difficult when the prior art was before the PTO examiner during prosecution of the application.'" Al-Site Corp. v. VSI Int'l, Inc., 174 F.3d 1308, 1323 (Fed. Cir. 1999), quoting Hewlett-Packard Co. Bausch & Lomb, Inc., 909 F.2d 1464, 1467 (Fed. Cir. 1990). This burden is "heightened . . . by the requirement of proving invalidity by clear and convincing evidence." Fina Tech., Inc. v. Ewen, 857 F.Supp. 1151, 1154 (N.D. Tex. 1994).

As the Federal Circuit has explained:

> [T]he party asserting invalidity not only has the procedural burden of proceeding first and establishing a prima-facie case [of invalidity], but the burden of persuasion on the merits remains with that party until final decision. The party supporting validity has no initial burden to prove validity, having been given a procedural advantage requiring that he come forward only after a prima-facie case of invalidity has been made. With all the evidence in, the trial court must determine whether the party on which the statute imposes the burden of persuasion has carried that burden.

---

MedImmune, Inc. v. Genentech, Inc., 127 S.Ct. 764, 776 n 11 (2007).

Stratoflex, Inc. v. Aeroquip Corp., 713 F.2d 1530, 1534 (Fed. Cir. 1983).

"In the end, the question is whether all the evidence establishes that the validity challenger so carried his burden as to have persuaded the decisionmaker that the patent can no longer be accepted as valid." Stratoflex, 713 F.2d at 1534.

Plaintiff moves for summary judgment in his favor on the counterclaim and asks the Court to determine that claims 12 and 13 of the '986 patent are not invalid for lack of novelty or anticipation, under § 102, or for obviousness, under § 103.[4] Plaintiff distinguishes the prior art from his claimed invention on the basis of the '986 patent pad's quadrilateral shape, foam filling, purpose, and capacity for use by an athlete to prevent injury.

In response to plaintiff's motion, defendant Rawlings argues that claims 12 and 13 of the '986 patent were anticipated by and were obvious in light of prior art. Defendant claims that the prior art contains many examples of orthopedic pads or supports that are quadrilateral-shaped and asserts that plaintiff's claimed pad is simply a combination of known elements. At a minimum, Rawlings argues, the prior art establishes that a genuine dispute of material fact exists whether claims 12 and 13 are obvious,

----

[4] Plaintiff does not address the third allegation in the counterclaim, made pursuant to 35 U.S.C. § 112, that the specification fails to comply with written description requirements.

precluding a grant of summary judgment for plaintiff on the counterclaim.

Plaintiff replies that the prior art cited by Rawlings is insufficient to overcome the strong presumption of validity that attaches to a patent when the cited prior art was before the patent examiner during prosecution. Plaintiff emphasizes that thirteen of the fourteen prior art references defendant cites were considered by the patent examiner during prosecution. Plaintiff argues that the fourteenth, U.S. Patent number 3,333,286 to Biolik, is cumulative of a patent considered by the examiner: U.S. Patent number 3,284,817 to Landwirth.

## 1. Anticipation

A patent may be invalid under 35 U.S.C. § 102 if the invention was "known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent." A patent is invalid for anticipation if "all of the elements and limitations of the claim are found within a single prior art reference." Scripps Clinic & Research Found. v. Genentech, Inc., 927 F.2d 1565, 1576 (Fed. Cir. 1991) (citations omitted). The identity between the prior art and the patented device must be complete; "[t]here must be no difference between the claimed invention and the reference disclosure, as viewed by a person of ordinary skill in the field of invention." Id.

Anticipation is a question of fact. Id. If no material facts relevant to anticipation are disputed, or the court determines that

even if all material factual inferences are drawn in favor of the non-movant, there is no reasonable basis on which the non-movant can prevail, summary judgment is appropriate. <u>Id</u>.

In his motion for summary judgment, plaintiff argues that because no single prior art reference contains all of the elements and limitations of claims 12 or 13, there is no anticipation as a matter of law. As plaintiff notes, defendant does not contest plaintiff's anticipation argument. Accordingly, the Court finds that defendant has not established the existence of a genuine dispute of material fact as to anticipation.[5] The Court will grant plaintiff's motion as it relates to the counterclaim for invalidity due to lack of novelty and anticipation under § 102.[6]

**2. Obviousness**

Even if the invention "is not identically disclosed or described as set forth in [35 U.S.C. §] 102," the patent is invalid "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." 35 U.S.C. § 103.

Whether an invention is obvious is ultimately a legal conclusion, but it rests on underlying factual determinations. <u>Al-</u>

---

[5] The Court notes that even if defendant had addressed the anticipation argument, it would not have prevailed, as no single prior art reference contains all of the elements of the '986 patent.

[6] Plaintiff also seeks to recover fees and costs expended briefing the anticipation issue. The Court will not address this request in the present order.

16

Site Corp., 174 F.3d at 1323. To show obviousness under 35 U.S.C. § 103, the party alleging invalidity "must show prior art references which alone or combined with other references would have rendered the invention obvious to one of ordinary skill in the art at the time of invention." Id. Stated differently, the Court must "determine whether a hypothetical person, having all the prior art at hand, would have found the same solution as plaintiff when addressing himself to the same problem." American Permahedge, Inc. v. Barcana, Inc., 857 F.Supp. 308, 319 (S.D.N.Y. 1994).

"The existence of each element of a claim somewhere in scattered prior art references does not, by itself, demonstrate obviousness . . . Instead, there must be a 'reason, suggestion, or motivation in the prior art that would lead one of ordinary skill in the art to combine the references, and that would also suggest a reasonable likelihood of success.'" Advanced Medical Optics, Inc. v. Alcon, Inc., 361 F.Supp.2d 404, 417 (D. Del. 2005), quoting Smiths Indus. Med. Sys., Inc. v. Vital Signs, Inc., 183 F.3d 1347, 1356 (Fed. Cir. 1999).

To assess obviousness, the Court must examine the following facts: (1) the scope and content of the prior art, (2) differences between the prior art and the claims at issue, and (3) the level of ordinary skill in the prior art. Secondary considerations include commercial success, long-felt but unsolved need, and failure of others. Cooper v. Ford Motor Co., 748 F.2d 677, 679 (Fed. Cir. 1984), citing Graham v. John Deere Co., 383 U.S. 1, 17-18 (1966).

### a. Level of Ordinary Skill

The parties did not provide expert testimony regarding the level of ordinary skill in the prior art, but defendant argues that none is required.  Courts consider several factors when determining the level of ordinary skill in the art: the educational level of the inventor, various prior art approaches employed, types of problems encountered in the art, rapidity with which innovations are made, sophistication of the technology involved, and educational background of those actively working in the field. Orthopedic Equip. Co. v. All Orthopedic Appliances, Inc., 707 F.2d 1376, 1382 (Fed. Cir. 1983).  "In certain situations, such as simple and easily understandable technology, a specific finding on the level of ordinary skill in the art is unnecessary because the prior art itself reflects the level of ordinary skill." Imperial Chem. Indus. PLC v. Danbury Pharmacal, Inc., 745 F.Supp. 998, 18 U.S.P.Q.2d 1497, 1507 (D. Del. 1990).  An obviousness determination may be made "without a specific finding of a particular level of skill or the reception of expert testimony on the level of skill where . . . the prior art itself reflects an appropriate level and a need for such expert testimony has not been shown." Chore-Time Equip., Inc. v. Cumberland Corp., 713 F.2d 774, 779 (Fed. Cir. 1983).  When such evidence is not presented and the court determines the level of ordinary skill is "that of an ordinary layman of average intelligence," the determination does not constitute reversible error.  See id. at 779; and Chore-Time Equip., Inc. v. Cumberland Corp., 217 U.S.P.Q. 168, 171 (E.D. Tenn.

1982). <u>See also</u> <u>Union Carbide Corp. v. American Can Co.</u>, 724 F.2d 1567, 1573 (Fed. Cir. 1984).

The pad taught by the '986 patent is a relatively straightforward device, and its function requires no particular expertise to understand. The Court thus finds that the correct level of skill in the art is the "ordinary layman of average intelligence."

### b. Scope of the Prior Art

The scope of the prior art is defined as "that 'reasonably pertinent to the particular problem with which the inventor was involved.'" <u>Stratoflex</u> 713 F.2d at 1535, <u>quoting</u> <u>In re Wood</u>, 599 F.2d 1032, 1036 (Cust. & Pat. App. 1979). Arts in other fields may be pertinent. "The scope of the prior art is defined by the nature of the problem confronting the would-be inventor. . . . If the elements, purposes, or techniques of other fields are relevant and useful to the problem solved by the patented device, those fields are analogous and should be considered within the scope of the prior art." <u>Medtronic, Inc. v. Cardiac Pacemakers, Inc.</u>, 555 F.Supp. 1214, 1217 (D. Minn. 1983) (citations omitted).

"'References that are not within the field of the inventor's endeavor . . . are described as "analogous art," when a person of ordinary skill would reasonably have consulted those references and applied their teachings in seeking a solution to the problem that the inventor was  attempting to solve.'" <u>Fike Corp. v. United States</u>, 41 Fed.Cl. 776 (Fed. Cl. 1998), <u>quoting</u> <u>In re GPAC, Inc.</u>,

57 F.3d 1573, 1577 (Fed. Cir. 1995) (additional citations omitted).[7]

Multiple prior art patents may be considered when determining whether the prior art provides a teaching, suggestion, or motivation for combining elements:

> Often, it will be necessary for a court to look to interrelated teachings of multiple patents; the effects of demands known to the design community or present in the marketplace; and the background knowledge possessed by a person having ordinary skill in the art, all in order to determine whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue.

KSR Int'l Co. v. Teleflex, Inc., 127 S.Ct. 1727, 1740-41 (2007).

When resolving the scope of the prior art, ultimately, "it is the claims that are the measure of the invention and the obviousness issue must be resolved on the basis of what is claimed." Jacobson Bros., Inc. v. United States, 512 F.2d 1065, 1070 (Ct. Cl. 1975).

Plaintiff identifies the relevant art as protecting knee joints from wear and tear due to squatting or kneeling and suggests that the capability for use by athletes is a further distinguishing factor. Plaintiff claims that most of the prior art patents

---

[7] See also Aerotec Indus. of Cal. v. Pacific Scientific Co., 381 F.2d 795, 802 (9th Cir. 1967), quoting Stearns v. Tinker & Rasor, 220 F.2d 49, 56-57 (9th Cir. 1955) ("'[W]hether arts or uses are analogous depends upon the similarity of their elements and purposes. It is said that if the elements and purposes in one art are related and similar to those in another art, and because and by reason of that relation and similarity make an appeal to the mind of a person having mechanical skill and knowledge of the purposes of the other art, then such arts must be said to be analogous; and, if the converse is true, they are non-analogous arts.'")

referenced by Rawlings fall into two categories of what he characterizes as non-analogous fields: articles for treatment of injuries or articles for protecting the body from contact and collisions with other objects. <u>See</u> Pl. Mem. in Supp. Mot. Summ. J. at 7.

Defendant Rawlings asserts that the prior art field covers several analogous devices, including therapeutic cushions and pads, athletic pads for various body parts, and structures for supporting the knee while kneeling. Defendant argues that the purposes for which these pads are used is less important than their structure. Rawlings claims that the prior art field includes quadrilateral shaped pads and the use of straps and open cell foam on the pads, elements which Rawlings claims were combined to create the plaintiff's pad. Defendant asserts that the statement of purpose or intended use for the invention, contained in the preamble to claim 12 of the '986 patent, does not function as a structural limitation on the claim.

A closer examination lends support to plaintiff's position, rather than to defendant's:

> The determination of whether preamble recitations are structural limitations or mere statements of purpose or use "can be resolved only on review of the entirety of the patent to gain an understanding of what the inventors actually invented and intended to encompass by the claim." . . . The inquiry involves examination of the entire patent record.

<u>Rowe v. Dorr</u>, 112 F.3d 473, 478 (Fed. Cir. 1997), <u>quoting</u> <u>Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.</u>, 868 F.2d 1251, 1257 (Fed. Cir. 1989). The <u>Rowe</u> court cites numerous cases in which

this determination rested on the "patent specification," the "patent as a whole," and the "claims, specifications, and drawings." <u>Id</u>. at 478. When examined in light of the patent as a whole, it is clear to the Court that the preamble to claim 12 is more than a mere statement of purpose or use, but instead constitutes a structural limitation.

The preamble to claim 12 of the '986 patent describes "A pad structure for relieving stress to a person's knee caused by the person squatting or kneeling." U.S. Pat. No. 5,073,986, col. 8, lines 6-7. The claim body then goes on to describe the shape of the pad, its orientation with respect to the wearer's leg, and means for securing it to the leg. The specification, like the preamble, clearly describes a pad structure for use while kneeling <u>and</u> while squatting. It cannot be said that the plaintiff's invention is merely a quadrilateral pad. The Court finds that the plaintiff invented a quadrilateral pad designed specifically to relieve knee pressure while kneeling and while squatting.

When attempting to solve the problem confronting plaintiff, a person of ordinary skill in the art reasonably could have consulted prior art relating to both quadrilateral pads and devices to relieve knee pressure. Thus, all of the patents cited by defendants - including athletic pads, knee pads used while engaged in work that requires kneeling, and the analogous arts of therapeutic and orthopedic pads that support the knee while the user is lying in prone position - are within the scope of the prior art.

**c. Differences between the Patented Device and the Prior Art**

The prior art is replete with instances of quadrilateral shaped pads.  Some can be used while kneeling, while some support the knee (or other body part) only when the user is lying in a prone position, or when the device is engaged with a floor or bed. None of the prior art references, however, can be used to reduce pressure on the knee while squatting. Even those used while kneeling require constant contact with the floor and are thus inappropriate for use while squatting.  These differences illustrate the absence of a teaching, suggestion, or motivation to combine the elements of the prior art.

Patent number 3,333,286 to Biolik, patent number 3,284,817 to Landwirth, and patent number 4,723,322 to Shelby are to be engaged with a supporting surface, such as a bed or floor.  Patent number 3,693,619 to Williams teaches a device with sidewalls to be used in health care as a protector for bony protuberances.  Patent number 3,901,228 to Brown concerns a therapeutic foot rest.  Patent number 4,084,584 to Detty teaches a sleeve to be placed over the knee to restrict the patella.  Patent number 4,392,489 to Wagner teaches a pillow to immobilize a patient's leg. Patent number 4,788,972 to Debusk teaches a dimpled padding for use in orthopedic support devices.  Patent number 4,844,094 to Grim describes an ankle brace for partial immobilization of the ankle.  Patent number 4,772,071 to Richards is intended for use only when kneeling, not when squatting, and must be engaged with the floor.

Patent number 3,585,639 to Enicks and number 4,441,211 to Donzis both teach padded devices for use in athletics. Enicks

claims a shock-absorbing pad, and Donzis claims a garment having shock absorbing qualities, such as a batting jacket, to be used to protect the wearer from externally applied force such as a pitched ball.

It cannot be said of these devices that a person skilled in the art "would have found the same solution as plaintiff when addressing himself to the same problem." American Permahedge, Inc. v. Barcana, Inc., 857 F.Supp. 308, 319 (S.D.N.Y. 1994). Either the devices are not addressed to the same problem as plaintiff faced (as with the devices for protection from collisions or for treating injuries), or they are substantially different from plaintiff's solution (as with devices which require engagement with another surface or which are only useful while kneeling, but not also while squatting). Accordingly, the Court finds that none of the above prior art references provide a teaching, suggestion, or motivation for combining their various elements.

Plaintiff argues, and the Court agrees, that the '286 patent to Biolik, the only prior art that was not before the examiner during prosecution, is cumulative of the '817 patent to Landwirth, because it is intended for use by bed-ridden patients while lying prone.

The last two prior art references are the 4,371,985 patent to Pokhis and the 4,377,309 patent to Mengshoel.

**'985 Patent to Pokhis**

Rawlings argues that the '985 patent to Pokhis shows that the idea of using a pad behind the knee to reduce pressure on the knee

joint was known, and therefore obvious, and it was also obvious to fill a pad with foam instead of air and to enclose it in fabric, regardless of the pad's intended use. Rawlings admits that Pokhis's Conical Bladder does not have the quadrilateral shape of the patent-in-suit.

Plaintiff counters that Pokhis teaches away from a quadrilateral shaped pad because the structure of the Pokhis device is a cone or triangle. "[W]hen the prior art teaches away from combining certain known elements, discovery of a successful means of combining them is more likely to be nonobvious." KSR, 127 S.Ct. at 1740. Additionally, plaintiff explains, the Pokhis patent was before the patent examiner during prosecution, and the examiner did not base a rejection on it.

The Court notes several key differences between Pokhis's conical bladder and plaintiff's pad. Pokhis's bladder can be used while kneeling and while squatting, but the stated purpose of the bladder is to <u>facilitate</u> squatting and kneeling. <u>See</u> U.S. Pat. No. 4,371,985, col. 2, line 65 (emphasis supplied). In contrast, the purpose of plaintiff's pad is to relieve knee stress caused by kneeling and squatting. The Pokhis bladder can be inflated with an air pump and then deflated, and it is conical, or three-sided. The plaintiff's pad is quadrilateral and composed of foam. These differences, combined with the different purposes of the two devices, do not suggest a teaching, suggestion, or motivation to combine Pokhis with elements of the other prior art.

In addition, plaintiff disclosed the Pokhis bladder to the patent examiner during prosecution, and the examiner did not base a rejection on it. Thus, the Court finds that the defendant has not overcome the strong presumption of validity when the examiner considered the prior art during prosecution, and the '986 patent is not obvious in light of the '985 patent to Pokhis.

### '309 Patent to Mengshoel

The patent examiner initially rejected plaintiff's patent application as obvious in light of the 4,377,309 patent to Mengshoel, concluding that it would have been obvious to design a supporting pad with side faces and overall shapes as claimed, filled with foam, and covered in nylon. In his response to the examiner's rejection, plaintiff argued that there was no teaching, suggestion, or motivation which would lead one of ordinary skill in the art to combine the Mengshoel patent with the elements (foam filling and nylon cover) found in other prior art, thus precluding a finding of obviousness. Finally, plaintiff asserted that his claimed design was more comfortable and effective than other prior art references, and, unlike those devices, was suitable for use by athletes.

The Mengshoel patent teaches a device for supporting a person in a kneeling position and comprises several claims with variations including a seat, an opening which encloses the ankle, and a base which engages with the floor. See U.S. Pat. No. 4,377,309, col. 3, lines 15-20, 51-54, and col. 4, lines 4-7. Any one of these variations would make use while squatting impracticable. These

differences, in combination with the different shape and materials composition, do not suggest a teaching, reason, or motivation to combine the Mengshoel device with elements of the other prior art to facilitate a finding of obviousness.

Additionally, as plaintiff emphasizes, the plaintiff's arguments apparently overcame the examiner's rejections, and the patent issued. The Court finds that defendant has not overcome the strong presumption of validity that attaches when prior art was before the patent examiner during prosecution, and the '986 patent is not obvious in light of the '309 patent to Mengshoel.

## IV. <u>Conclusion</u>

Plaintiff has not demonstrated that the Rawlings Knee Reliever (adult or youth models) infringes the '986 patent, literally or under the doctrine of equivalence. The Court will grant defendant's motion for summary judgment on the infringement claim.

The Court will also grant plaintiff's motion for summary judgment that the '986 patent is not invalid for anticipation under 35 U.S.C. § 102.

Rawlings has not shown by clear and convincing evidence that the patent is invalid as obvious or for lack of novelty. The Court will also grant plaintiff's motion for summary judgment that the '986 patent is not invalid as obvious under 35 U.S.C. § 103.

The plaintiff's motion for summary judgment did not address the portion of the counterclaim pursuant to section 112, and so that portion of the counterclaim remains at issue for trial.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [# 79] is **granted.**

**IT IS FURTHER ORDERED** that plaintiff's motion for summary judgment on the issue of infringement [# 74] is **denied.**

**IT IS FURTHER ORDERED** that plaintiff's motion for summary judgment on the issue of invalidity [# 77] is **granted in part** and **denied in part.**

**IT IS FURTHER ORDERED** that defendant's motion for leave to amend its answer [# 60] is **denied as moot.**

**IT IS FURTHER ORDERED** that defendant's motion to compel production [# 71] is **denied as moot.**

**IT IS FURTHER ORDERED** that plaintiff's motion to exclude the defense of reliance on advice of counsel [# 66] is **denied as moot.**

**IT IS FURTHER ORDERED** that defendant's motion to extend discovery [# 59] is **denied as moot.**

**IT IS FURTHER ORDERED** that defendant's motion to bifurcate the issues of infringement and willfulness for trial [# 56] is **denied as moot.**

**IT IS FURTHER ORDERED** that defendant's motion for leave to file a sur-reply in support of its motion to bifurcate [# 61] is **denied.**

**IT IS FURTHER ORDERED** that plaintiff's motion to exclude the testimony of defendant's expert, Grantland Drutchas [# 122] is **denied as moot.**

**IT IS FURTHER ORDERED** that plaintiff's motion to disqualify Penny Slicer is **denied as moot.**

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 31st day of March, 2008.